IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |  |
|---|---|---|
| JONATHAN VOORHIS, | ) ) ) | 1:23-CV-66-SPB-RAL |
| Plaintiff | ) ) ) | SUSAN PARADISE BAXTER United States District Judge |
| v. | ) ) ) | RICHARD A. LANZILLO Chief United States Magistrate Judge |
| CINDY DIGANGI, et al., | ) ) ) | Report and Recommendation on Defendants' Motions to Dismiss |
| Defendants | ) ) ) | ECF Nos. 29 and 33. |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss filed by Defendants Erie Police Department, City of Erie, and Officers Miller and Morgenstern (collectively, the "City of Erie Defendants") [ECF Nos. 29] be granted. It is further recommended that the motion to dismiss or, in the alternative, for summary judgment [ECF No. 33] filed by Defendants Cindy Digangi, Julie Lafferty, and the Office of Children and Youth (collectively, the "OCY Defendants") be converted into a motion for summary judgment. Finally, it is recommended that the OCY Defendants' motion, treated as such, be granted and this action dismissed.[1]

---

[1] This matter has been referred to the undersigned for a Report and Recommendation pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1).

II.    Report

    A.  Factual Allegations

The following factual narrative derives primarily from the allegations in Voorhis'

pleading and the records from his underlying state court child custody proceeding.  On

February 5, 2022, a minor child, A.A.V., was born to Plaintiff Jonathan Voorhis and Willow

Augustine at Saint Vincent Hospital in Erie, Pennsylvania.  ECF No. 15 at p. 18.  After a urine

analysis performed on Augustine by the hospital came back positive for marijuana, the hospital

referred the family to the Erie County Office of Children and Youth (OCY).  *Id.*  The case was

assigned to caseworker Erika Mojica, a non-Defendant, who was supervised by Defendant Julie

Lafferty.  *Id.*

According to Voorhis, the "[t]he case that was opened on 2-5-22 because of the urine

analysis testing positive for THC was later closed because substance abuse was invalidated."  *Id.*

Shortly thereafter, Lafferty and Defendant Cindy Digangi, another caseworker at OCY, allegedly

"created [a] plan to falsify documents and open a Office of Children and Youth case without

informing Jonathan Voorhis with the intent to detain A.A.V. to create emotional distress with the

intention to cause both Jonathan Voorhis and Willow Augustine to commit suicide."  *Id.* at 19.

Their plan was "partially a success as the mother did commit suicide and A.A.V. was detained

and entered foster care."  *Id.*

In furtherance of their plan, Lafferty spoke with Voorhis while he was incarcerated at the

State Correctional Institute at Frackville and informed him that "the case was closed due to the

substance abuse being invalidated and [told him] that the entire family will be permitted to

reunify at their home . . . upon Jonathan's release from [prison]."  *Id.* at 20.  Lafferty and

Digangi then opened a second OCY case "for the mother's mental health concerns" but did not

notify him of the second case. *Id.* This left Voorhis "under the illusion the administration no longer was involved with the family and that the administration no longer was attempting to interfere with Jonathan's parental rights or custody of A.A.V." *Id.* at 20-21.

For the six weeks between February 5 and March 23, 2022, Digangi was hostile and disrespectful towards Augustine to "lower the chances of the reunification of the family." *Id.* at 21. She repeatedly blamed Augustine for the death of a previous child, falsely accusing her of killing the child by "co-sleeping" and crossing out "pneumonia" as the cause of death on official government documents and replacing it with "co-sleeping." *Id.* Lafferty knew that Digangi was falsifying these documents but "did nothing to correct the falsehoods," while OCY "failed to establish a grievance process or to provide referred families with information they could use to report abuse." *Id.* at 24. As a result, Voorhis contends that each Defendant acted with deliberate indifference to Augustine's mental health and contributed to her suicide.[2]

Voorhis alleges that, on March 23, 2022, two City of Erie police officers – Defendants Miller and Morgenstern – accompanied Digangi while she served an Emergency Protective Order on Augustine. *Id.* at 25. Defendants allegedly served the court order after business hours because a hearing was schedule for the following morning at 9:30 a.m. and Digangi wanted to ensure that Augustine did not have time to obtain a lawyer. *Id.* at 26. Voorhis alleges that Digangi and other OCY employees knew that Augustine had mental health issues and hoped to "trigger a mental health crisis situation" by providing belated notice of the hearing. *Id.* at 26. Augustine committed suicide "within 2 hours of the Administration serving her with the

---

[2] Voorhis also contends that the City of Erie "is liable as they did know weaponizing The Office of Children and Youth was a common practice to inflict emotional distress and abuse of process by submitting false statements or misleading assertions in government documents but did not establish a hotline or safeguards that would have informed the Plaintiff there was a place to report abuse or misleading assertions in government documents." *Id.* at 25.

Emergency Protective Order." *Id.* at 28. When OCY officials "discovered their plan was not a complete success" because Voorhis had not yet committed suicide, he started receiving "taunting" from third parties "warning [him] of [Augustine's] looming death and that the Plaintiff and A.A.V. were next to die." *Id.* at 28.

At the hearing on March 24, 2022, Lafferty, Digangi, and OCY allegedly "use[d] false statements and misleading assertions . . . to unlawfully detain A.A.V. and violate Plaintiff's right to due process." *Id.* at 31. Voorhis contends that he was never made aware of that hearing or given an opportunity to obtain counsel and prepare evidence to counter OCY's false statements. *Id.* He also accuses OCY of "fail[ing] to investigate [Augustine's] death," which he attributes to Digangi and Lafferty. *Id.*

Voorhis alleges that, on March 29, 2022, Digangi "contacted [him] for the first time and inform[ed] him he had 15 months to complete everything [OCY] tells him to, that it would be impossible for him to compete these tasks while in prison, that it did not matter the charges were pending, nor that the charges would be ultimately dismissed because of findings the charges resulted from a false arrest, false imprisonment, and malicious prosecution." *Id.* at 32. Voorhis later received several letters from OCY containing false statements relating to the cause of death of Augustine's first child, the date of delivery of the Emergency Protective Order, and Augustine's history of heroin overdose. *Id.*

The state court records pertaining to A.A.V.'s custody proceedings shed further light on Voorhis' allegations. According to OCY's Application for Emergency Protective Order, the agency received a referral on February 5, 2022, indicating that Augustine had given birth to A.A.V. at 29 weeks gestation while positive for marijuana. ECF No. 33-2. At the time of birth, A.A.V. weighed only two pounds. *Id.* Against medical advice, Augustine left the hospital

twelve hours after A.A.V.'s birth, leaving A.A.V. in the NICU on oxygen with alarms to alert

staff when he stopped breathing. *Id.* According to OCY records, Augustine went days without

visiting her child and missed all the provided feeding times. *Id.* On one visit, she fell asleep

while holding A.A.V. *Id.* Hospital staff noted that this presented a particular concern because

her previous child "died in March 2021 due to co-sleeping and having untreated acute bronchitis

and pneumonia. *Id.* Finally, OCY noted that Voorhis was incarcerated and unable to care for

A.A.V. at the time. *Id.*

The Erie County Court of Common Pleas granted OCY's Application for Emergency

Protective Order on March 23, 2022. ECF No. 33-3. The court's order placed A.A.V. in OCY's

temporary protective physical and legal custody. *Id.* That same day, OCY filed an Application

for Shelter Care in which the agency expressed concerns about A.A.V.'s care if he were to be

discharged to his mother. ECF No. 33-4. The court granted that order and scheduled an

Emergency Custody and Shelter Care Hearing for the following day at 9:30 a.m. ECF No. 33-5.

According to Lafferty, Digangi served Augustine with notice of the hearing on the

evening of March 23, 2022. ECF No. 33-6 ¶¶ 6-7. Later that evening, Lafferty received word

that Augustine had committed suicide. *Id.* ¶ 8.

At the March 24 hearing, the court concluded that it was in A.A.V.'s best interest to

remain in the legal and physical custody of OCY because his father was in prison and his mother

was deceased. ECF No. 33-7. The court ordered A.A.V. to foster care upon discharge from the

hospital and recommended that he be transferred to kinship care if an appropriate family member

resource became available. *Id.*

An Adjudication and Disposition Hearing was held on April 5, 2022. ECF No. 33-9.

Because of Voorhis' incarceration, his attorney attended the hearing on his behalf. *Id.* After

reviewing the allegations in OCY's Dependency Petition, the court found by clear and

convincing evidence that A.A.V. was a Dependent Child "without proper care, control,

subsistence, education as required by law, or other care or control necessary for his physical,

mental, or emotional health, or morals." *Id.* The court ordered A.A.V. placed in immediate

foster care with a permanent placement goal of being "return[ed] to parent or guardian." *Id.* The

court ordered OCY to "engage and continue in family finding" in hopes of exploring kinship

placement options. *Id.* Finally, the court ordered Voorhis to submit to genetic testing to

establish paternity.[3] *Id.*

 A Permanency Review Hearing was held on July 27, 2022, with Voorhis again appearing

through counsel. *Id.* Following the hearing, A.A.V. was placed in the care of Voorhis' mother.

*Id.*

 On October 20, 2022, OCY filed a motion to change the permanent placement goal for

A.A.V. to legal custodianship with Voorhis' mother. ECF No. 33-12. Following a Permanency

Review Hearing on November 9, 2022, the court ordered that legal and physical custody of

A.A.V. remain with OCY and that the child continue to reside with his paternal grandmother. *Id.*

On May 22, 2023, the court terminated its supervision of the child, discharged OCY's temporary

legal and physical custodianship of A.A.V., and awarded Permanent Legal Custodianship of

A.A.V. to Voorhis' mother. ECF No. 33-14.

 Based on the foregoing, Voorhis seeks $150,000,000.00 in monetary damages, an

injunction directing OCY to "enact policies and procedures that create an action of review

committee that is 'outside' of the supervision of the Office of Children and Youth staff in

relation to claims of negligence and safety related concerns to those referred to the Office of

---

[3] Voorhis' paternity was ultimately established on June 28, 2022. ECF No. 33-10.

Children and Youth." *Id*. at 42. He also requests a federal investigation into Augustine's death and custody of A.A.V. *Id*. at 43.

    B.  Procedural background

    Voorhis initiated this action on March 14, 2023, by filing a motion for leave to proceed in forma pauperis (IFP) and a proposed complaint. The Court granted his IFP motion June 14, 2023, and directed the Clerk to docket his Complaint. *See* ECF No. 8. Voorhis filed an Amended Complaint – the currently operative pleading – on July 24, 2023. ECF No. 15.

    On November 16, 2023, the City of Erie Defendants moved to dismiss the Amended Complaint. ECF No. 29. Voorhis responded to that motion on December 8, 2023. ECF No. 37.

    On November 22, 2023, the OCY Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, accompanied by a Brief in Support and a Concise Statement of Material Facts. ECF Nos. 33-35. In directing Voorhis to respond, the Court cautioned him that the OCY Defendants' motion "may be treated, either in whole or in part, as a motion for summary judgment under Federal Rule of Civil Procedure 56." ECF No. 36 (citing *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010)). The Court advised Voorhis that "in treating the motion to dismiss as a motion for summary judgment, the motion will be evaluated under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure" and that Voorhis' response, accordingly, could include exhibits, counter-affidavits, or other relevant evidence. *Id*. The Court also provided Voorhis with a copy of Rule 56. *Id*.

    Voorhis filed a response brief, *see* ECF No. 38, but failed to file a responsive Concise Statement of Material Facts and declined to submit exhibits or evidence. The OCY Defendants filed a reply brief on December 21, 2023. ECF No. 42. As such, this matter is ripe for adjudication.

C.  Standards of Review

1.  Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478

U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the

following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally, 'where there are
> well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief.'

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679.

Finally, because Voorhis is proceeding pro se, the allegations of his complaint will be

held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*,

404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a

valid claim upon which relief can be granted, it must do so despite his failure to cite proper legal

authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity

with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel.*

*Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be

inartfully drawn and should be read "with a measure of tolerance").

2.  Rule 56(a)

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

 3. Local Rule 56 Violation

 This Court's Local Rule 56.C.1 requires a party opposing a motion for summary judgment to file a responsive concise statement in which the party: admits or denies the facts stated in each numbered paragraph of the movant's concise statement; identifies the basis for each denial of fact with appropriate citation to the record; and sets forth, in separately numbered paragraphs, any additional material facts upon which the non-moving party bases his opposition to the motion. *See* LCvR 56.C.1. This Court requires strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n. 3 (W.D. Pa. Oct. 10, 2018), adopted by 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

 A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing

party." LCvR 56.E. While courts provide some leniency to pro se litigants when applying procedural rules, the Court "'is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out.'" *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

In the instant case, the Court explicitly cautioned Voorhis that Defendants' motion might be treated as a motion for summary judgment. *See* ECF No. 36. Despite this warning, Voorhis failed to respond to Defendants' Concise Statement of Material Facts, as required by the Local Rule. LCvR 56.E. Accordingly, Defendants' statements of material fact must be deemed admitted. *Id.* However, the Court will consider any evidence submitted by Voorhis that specifically contradicts Defendants' statement of facts, to the extent that the evidence is properly supported by the record. *Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted").

D. Analysis

1. Preliminary matters

Before addressing the heart of Voorhis' claims, the Court notes that his pleading invokes a wide-ranging and scattershot list of constitutional principles and common law causes of action, many of which are referenced only tangentially. Among other things, he states that he has been

"denied the rights guaranteed to him under the due process clause of the 14[th] Amendment, denied the right to effective counsel guaranteed to him under the 6[th] Amendment, and was subject to an unreasonable seizure violating his 4[th] Amendment rights, that he was denied equal protection under law, that he has been subject to cruel and unusual punishment, violation of his custodial rights, was the victim of a racketeering influenced corrupt organization, intentional infliction of emotional distress, a victim of defamation, negligent infliction of emotional distress, negligent supervision, all being violations of the Pennsylvania State and United States Federal Constitutions." ECF No. 15 at 36. He also references his "right to be free from the use of falsified government documents, false statements, and misleading assertions" and accuses Defendants of "fail[ing] to intervene to protect the Plaintiff from physical harm, and emotional distress." *Id.* at 39-40.

Many of these claims are non-starters. For example, the Sixth Amendment's right to counsel attaches only in criminal proceedings. *McMickle v. United States*, 530 Fed. Appx. 139 (3d Cir. 2013) (noting that the Sixth Amendment guarantee of effective counsel does not apply in civil cases); U.S. Const. amend. VI (right to counsel applies in "criminal prosecutions"). The Eighth Amendment's prohibition against cruel and unusual punishment does not apply outside of the prison context. *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("[T]he Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'") (quoting *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989)). There is not a single factual allegation in Voorhis' pleading to support any of the elements of an equal protection claim, a defamation claim, or a RICO claim, and several of his other purported causes of action (such as negligent supervision and the right to be free from "falsified government documents")

simply do not exist as stand-alone enforceable rights under state or federal law. Each of these claims should be dismissed, with prejudice.

Additionally, Voorhis has failed to allege any facts that might support a plausible claim against the City of Erie Defendants – Officer Miller, Officer Morgenstern, and the City of Erie.[4] With respect to the two individual police officers, Voorhis alleges only that they accompanied Digagni when she served the Emergency Protective Order on Augustine on March 23, 2022. No other conduct is attributed to either officer. As this Court has frequently noted, a successful § 1983 plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 667 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Voorhis' fleeting reference to Miller and Morgenstern being present when Digangi served a hearing notice falls well short of this standard.

As to the City of Erie, Voorhis alleges that the City had an obligation to "establish[] a grievance process to report abuse from governmental entities, establish safeguards to keep a civilian safe during a mental health crisis, establish safeguards to keep a civilian safe from abuse from government entities or employees, [and] to investigate when a loss of life occurs after the delivery of an Emergency Protective Order by a government employee." ECF No. 15 at 8-9. He

---

[4] Voorhis also includes the "Erie Police Department" as a Defendant. It is axiomatic, however, that a municipal police department is not a proper defendant in a § 1983 action. *See, e.g., Hernandez v. Borough of Palisades Park Police Dep't*, 58 Fed. Appx. 909, 912 (3d Cir. 2003). This is because "a police department is merely an administrative arm of the municipality itself." *Id.* Accordingly, the Erie Police Department should be dismissed from this action, with prejudice.

also alleges that the City knew that "weaponizing The Office of Children and Youth was a common practice to inflict of emotional distress and abuse of process by submitting false statements or misleading assertions in government documents" but "failed to establish a hotline or safeguards" to prevent these practices. *Id.* at 25.

Each of these claims is legally frivolous. A municipality is not constitutionally obligated to provide a grievance "hotline" to handle complaints from community members[5] or proactively establish safeguards to protect citizens during mental health crises. Nor does an individual have the constitutional right to insist upon "the investigation or prosecution of another." *Sanders v. Downs*, 420 Fed. Appx. 175, 180 (3d Cir. 2011) (per curiam). To the extent that Voorhis complains that the City of Erie failed to restrain or supervise OCY, the Court notes that OCY is a county agency that does not operate under the jurisdiction of the City of Erie. In the absence of a causal link between the City of Erie and Voorhis' allegations of misconduct, dismissal is appropriate.

With those matters disposed of, the following causes of action remain: 1) a Fourth Amendment claim for unlawful search and seizure, presumably based on OCY's efforts to secure a protective order giving the agency temporary legal and physical custody of A.A.V.; 2) a procedural due process claim against Digangi for failing to provide adequate notice of the Emergency Custody and Shelter Care Hearing; 3) a procedural due process claim against Digangi and Lafferty for allegedly using "falsified government documents" to mislead the Court of Common Pleas into granting OCY custody over A.A.V.; 4) a *Monell* claim against OCY for

---

[5] Voorhis' contention that the lack of a grievance process leaves "parents . . . without any procedural guidance through which they can adequately seek redress of their safety concerns" is simply inaccurate. As our Court of Appeals has noted, '[c]hild welfare workers must seek an adjudication of dependency from a neutral judge whose decisions are guided by the 'best interests of the child' and subject to appellate review." *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486, 497 (3d Cir. 1997). Consequently, "the judicial process itself provides significant protection" against abuses committed by child welfare workers. *Id.*

"failing to implement any policies, procedures, adequate training, or oversight of already existing policies" to protect "a parent suffering from mental health issues and suicidal ideations"; and 5) state law claims for wrongful death and negligent and intentional infliction of emotional distress. Defendants, in turn, assert defenses of absolute immunity, qualified immunity, and failure to state a claim. Each will be addressed to the extent necessary to resolve Defendants' motions.

    2.  Absolute Immunity

Defendants first maintain that all claims against Digangi and Lafferty are barred by the doctrine of absolute immunity. The Court agrees.

In *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that "child welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings, and that this immunity was broad enough to include the formulation and presentation of recommendations to the court in the course of the proceedings." *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (citing *Ernst*, 108 F.3d at 495-96). The Court reasoned that, "similar to prosecutors who are responsible for the initiation of criminal proceedings, child welfare workers are responsible for bringing dependency proceedings and must exercise independent judgement in determining when to bring such proceedings." *Id.* Like prosecutors, child welfare workers must also make those decisions "in a short amount of time" based upon "incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." *Ernst*, 108 F.3d at 496. That exercise of judgment "would likely be compromised if the worker faced the threat of personal liability for every mistake in judgment." *Id.* Finally, the Court noted that "there are safeguards built into the child-dependency process that protect the public from unconstitutional conduct by CYS

caseworkers" including a judicial process – including appellate review – whereby a neutral and detached judge must make a dependency determination based on the "best interests of the child" standard. *Nwani v. Delaware County Children & Youth Services*, 2024 WL 1181437, at *5 (E.D. Pa. Mar. 19, 2024) (citing *Ernst*, 108 F.3d at 497).

The critical inquiry in prosecutorial immunity cases is whether the defendant was functioning as the state's advocate while engaging in the alleged misconduct. *Yarris v. Cnty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)). Courts have widely held that the actions attributed to Digangi and Lafferty – in essence, petitioning a court to remove a child from the custody of a parent for the child's safety – are "intimately associated with the judicial process in much the same way as are a prosecutor's actions in representing the state in criminal prosecutions." *Ernst*, 108 F.3d at 496 (internal quotation marks omitted). *See, e.g.*, *B.S. v. Somerset County*, 704 F.3d 250, 266 (3d Cir. 2013) (absolute immunity protected OCY caseworkers from procedural due process claim based on "recommend[ing] that the court issue an order depriving Mother of custody of Daughter"); *Dennis v. DeJong*, 867 F. Supp. 2d 588, 628-29 (E.D. Pa. 2011) (concluding that Child and Youth Services caseworkers "are protected by absolute immunity for their actions in making presentations and recommendations to the court" in a child dependency proceeding); *Nwani*, 2024 WL 1181437, at *4-5 (same). Critically, this immunity extends to "false statements or misrepresentations" made by child welfare workers in court filings or during dependency hearings.[6] *Lowe*, 2020 WL 7223416, at *8 (OCY caseworkers "absolutely immune" for presenting allegedly false information in a petition and during a court hearing); *Dennis*, 867 F.

---

[6] Although Voorhis alleges in his pleading that Digangi and Lafferty made false representations to the state court during A.A.V.'s dependency proceeding, he has not submitted any evidence to create a triable issue of material fact as to this claim.

Supp. 2d at 628 (concluding that the employees of CYS were absolutely immune for misstatements of law and fact included in a memorandum to the court); *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 642-43 (E.D. Pa. 2010) (determining that the CYS caseworkers were absolutely immune for making false statements to the judge and initiating the proceedings surreptitiously).[7]  Voorhis' claims against Digangi and Lafferty should be dismissed on this basis.

### 3.  Procedural Due Process

To the extent that any of Voorhis' claims against Digangi and Lafferty are not barred by absolute immunity, he has failed to adduce evidence to create a triable issue of material fact as to the elements of those claims.  Turning first to his allegation that Digangi provided Augustine with inadequate notice of the Emergency Custody and Shelter Care Hearing, Voorhis cannot establish that he had a due process right to receive notice under those circumstances.[8]  In *Miller v. City of Philadelphia*, the Court of Appeals for the Third Circuit held that "requiring that a parent or his attorney be included in emergency pre-deprivation hearings" – even if available – would "inhibit, deter, and, at times, subvert the crucial function of *ex parte* custody hearings – protecting children who are in imminent danger of harm."  174 F.3d 368, 374 (3d Cir. 1999) (dismissing procedural due process claim that agency excluded an available parent from

---

[7] In *Guest v. Allegheny County*, a case cited by Voorhis in his opposition brief, the district court declined to apply absolute immunity to a fabricated evidence claim against an OCY caseworker because it could not determine at the Rule 12(b)(6) stage whether the allegedly fabricated evidence implicated the caseworker's investigative or prosecutorial function.  2020 WL 4041550, at *10 (W.D. Pa. July 17, 2020) (noting that the allegedly fabricated evidence arguably stemmed from "a faulty or deliberately false investigation").  Unlike in *Guest*, the allegedly false allegations in the instant case clearly implicate Defendants' prosecutorial function.  *See, e.g., Lowe*, 2020 WL 7223416, at *8.

[8] Indeed, it is unclear whether Voorhis even has standing to bring such a claim.  At the time of that hearing, Voorhis was incarcerated at the Erie County Prison and his paternity had not yet been established.  Thus, even if the notice provided to Augustine somehow amounted to a due process violation, it would likely fall on Augustine (or, in this case, her legal successor) to assert that claim on her behalf.

participating in an emergency pre-deprivation hearing). In other words, "[f]or these types of hearings, the need to protect children outweighs the interests of the parents." *Lowe v. Lancaster County Children and Youth Social Services*, 2020 WL 7223416, at *7 (E.D. Pa. Dec. 8, 2020). This is particularly true where the parent has an opportunity to participate in subsequent custody hearings, as Voorhis was able to do through counsel. *Id.* ("[T]he court held a prompt second hearing . . . about which Lowe was notified. Accordingly, had there been a due process violation, this hearing would have cured any violation."). For each of these reasons, any failure by Digangi to provide Augustine or Voorhis with an adequate opportunity to prepare for the initial Emergency Custody Hearing did not violate his right to due process.

  4. Substantive Due Process

  Construing his pleading liberally, Voorhis' also may be attempting to assert a substantive due process claim based on his contention that Defendants initiated a flawed and unnecessary dependency proceeding. Parents have a "constitutionally protected liberty interest . . . in the custody, care and management of their children." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997); *Santosky v. Kramer*, 455 U.S. 745, 751-52 (1982). Although this "does not include a right to remain free from child abuse investigations," the government must have "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse" before it takes the drastic step of separating a child from his or her parents. *Id.* at 1125-26. *See also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (touchstone of substantive due process analysis "is the protection of the individual against arbitrary action of government"); *Mulholland v. Government County of Berks, Pa.* 706 F.3d 227, 241 (2013) (government must have "'an objectively reasonable suspicion of abuse,' based on the information available at the time."). To

demonstrate that the government lacked an objectively reasonable suspicion of abuse, a plaintiff must adduce evidence that the child welfare agency or child welfare worker at issue engaged in conduct that "reach[ed] a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller*, 174 F.3d at 375-76. *See also Mulholland*, 706 F.3d at 241 ("[A] child welfare agency abridges an individual's substantive due process rights when its action . . . 'shocks the conscience.'").

The record here is undisputed. OCY became involved with A.A.V. after Augustine tested positive for marijuana shortly after childbirth. At the time, A.A.V. weighed only two pounds, having been born several months premature. Augustine left the hospital shortly after A.A.V.'s birth against medical advice and visited her child only sporadically. Hospital workers reported that Augustine repeatedly failed to visit A.A.V. during critical feeding times. Upon receiving the referral from the hospital, the OCY Defendants noted that Augustine had lost a previous child at a young age, possibly due to co-sleeping. Based on the available information, no reasonable jury could conclude that the OCY Defendants' decision to pursue an emergency dependency hearing and secure physical and legal custody of A.A.V. shocked the conscience.

As noted above, Voorhis disputes many of these facts, suggesting that Defendants fabricated the threat to A.A.V.'s safety to secure custody of A.A.V. and induce Augustine to commit suicide. However, he has failed to submit any evidence to counter the exhibits and records relied upon by Defendants. While Voorhis is entitled to have all factual inferences drawn in his favor at this stage, a party opposing a properly supported motion for summary judgment "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Rather, he must "point to some evidence in the record that creates a genuine issue of material fact." *Id.*

(noting that summary judgment is "put up or shut up" time for the non-moving party). Because Voorhis has failed to satisfy this burden, summary judgment is appropriate.

     5.  Fourth Amendment

     Voorhis' Fourth Amendment claim appears to rest on his belief that the seizure of A.A.V. by OCY officials was unconstitutional because there was no actual threat to her health or safety. However, "[a] Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf." *See Smith-Goodman v. Cty. of Phila. Dep't of Human Servs.*, 2018 WL 4494102, at *4 n. 5 (E.D. Pa. Sept. 19, 2018) (citing *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012)). *See also D.M. v. County of Berks*, 929 F.Supp.2d 390, 399 n. 5 (E.D. Pa. Mar. 14, 2013). Because a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself, Voorhis cannot assert a Fourth Amendment child seizure claim on A.A.V.'s behalf. *Id. See also Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("[A] parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children."). Dismissal on this basis is appropriate. *Smith-Goodman v. City of Philadelphia Dep't of Hum. Servs.*, 2019 WL 3802041, at *6 (E.D. Pa. Aug. 13, 2019), *aff'd sub nom. Smith-Goodman v. Turning Points for Child. CUA9*, 813 Fed. Appx. 71 (3d Cir. 2020).

     Voorhis claim also fails on the merits. Courts have recognized that the Fourth Amendment protects the parent-child relationship by ensuring that any "seizure" of a child by welfare workers must be reasonable under the circumstances. *Ferris v. Milton S. Hersey Medical Center*, 701 Fed. Appx. 91, 94 (3d Cir. 2017). The removal of a child is reasonable "if exigent circumstances pose an immediate threat to the safety of the child." *Id.* (citing *Good v.*

*Dauphin Cty. Soc. Servs.*, 891 F.2d 1087, 1094 (3d Cir. 1989)). Where the seizure takes place

pursuant to a state court order, the plaintiff must establish that the application for that order

"[was] so lacking in indicia of probable cause as to render official belief in its existence

unreasonable." *Studli v. CYF Cent. Reg'l Ofc.*, 346 Fed. Appx. 804, 809-10 (3d Cir. 2009)

("[T]he case workers cannot be liable for conduct that was ordered by [the] trial court[,] ... absent

anything like fraud, unreasonableness or bad faith.").

Here, there is no question that Defendants took temporary custody over A.A.V. pursuant

to an order from the Court of Common Pleas of Erie County. While Voorhis disputes the

veracity of the representations Defendants made to the court to obtain that order, he has not

submitted any evidence to create a triable issue of material fact as to that issue. Summary

judgment is therefore warranted.

     6.  *Monell* Liability

In addition to his claims against Digangi and Lafferty, Voorhis contends that OCY

violated his constitutional rights by failing to establish a grievance process to "challenge the

validity of the reports they were publishing to the Erie County Courthouse before they were

submitted" or "report abuse." ECF No. 15 at 24. He also alleges that they "failed to implement

any policies, procedures, adequate training, or oversight of already existing policies" with

respect to "parent[s] suffering from mental health issues and suicidal ideations." *Id.* at 34. The

Court construes these allegations as an attempt to assert a claim against Erie County[9] pursuant to

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).

In *Monell*, the United States Supreme Court held that "a municipality may be liable under

§ 1983 'when execution of a government's policy or custom, whether made by its lawmakers or

---

[9] Although Voorhis identified OCY as the named defendant for his municipal liability claims, the parties appear to acknowledge that the actual target of those claims is Erie County. *See* ECF No. 34 at 11.

by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible.'" *Curran v. Venango County*, 2023 WL 8439274, at *4 (W.D. Pa. Nov. 2, 2023) (quoting *Monell*, 436 U.S. at 694). To state a claim, the plaintiff must allege facts to support a finding that the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Id.* (quoting source omitted).

Critically, "the requirement of an underlying constitutional violation is implicit in the Third Circuit's *Monell* framework." *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018). *See also Gayemen v. Sch. Dist. of City of Allentown*, 2016 WL 3014896, *12 (E.D. Pa. May 26, 2016) (holding that a plaintiff asserting a *Monell* claim must plead an underlying constitutional violation); *Wilson v. City of Philadelphia*, 177 F.Supp.3d 885, 913 (E.D. Pa. Apr. 8, 2016) ("To successfully plead his *Monell* claim, Wilson must establish an underlying constitutional violation.") (citing *Monell*, 436 U.S. at 658). As noted above, Voorhis has failed to adduce sufficient evidence to create a triable issue of material fact as to any of his claims. This failure to establish an underlying violation is fatal to his *Monell* claim. *See Mills v. City of Harrisburg*, 350 Fed. Appx. 770, 773, n. 2 (3d Cir. 2009) ("Absent an underlying constitutional violation by an agent of the municipality, [...] the municipality itself may not be held liable under § 1983."); *3909 Realty LLC v. City of Philadelphia*, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021) ("As the Court finds that Plaintiffs have not plausibly alleged any underlying constitutional violation, it is not necessary to decide the *Monell* liability issue."); *Wilson*, 177 F.Supp.3d at 917 ("Wilson fails to establish an underlying constitutional violation, and the Court accordingly need not address his *Monell* claim against the City in any further detail.").

7.  State law claims

Finally, Voorhis asserts state law claims for wrongful death and negligent and intentional infliction of emotional distress.  The Court should decline to exercise pendent jurisdiction over these claims.

"Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994).  Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 Fed. Appx. 68, 74 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted); *see also Yue Yu v. McGrath*, 597 Fed. Appx, 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction").  "Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Yue Yu*, 597 Fed. Appx. at 68.

As each of Voorhis' remaining claims are entirely grounded in state law, the Court should decline to exercise supplemental jurisdiction over those claims.  *Id.* at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction").  Consequently, Voorhis' state law claims for wrongful death and negligent and intentional infliction of emotional distress should each be dismissed, without prejudice to his refiling the same in state court.

III.    Conclusion

For the reasons stated herein, it is respectfully recommended that the City of Erie Defendants' Motion to Dismiss [ECF No. 29] be granted. It is further recommended that the OCY Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [ECF No. 33] should be treated as a motion for summary judgment and granted. Judgment should be entered in favor of Defendants and against Plaintiff.

IV.    Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 12th day of August, 2024.

SUBMITTED BY:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE